IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RACHEL L. YANCHAR,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | CV 14-111-BLG-CSO<br><br>**ORDER** |

Plaintiff Rachel L. Yanchar ("Yanchar") filed this action seeking judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383(c). *ECF 1.* The issues have been fully briefed. *See ECF 10, 11, 12.* Having reviewed the Administrative Record ("AR") and the parties' arguments, the Court enters the following order.

I. **PROCEDURAL BACKGROUND**

Yanchar protectively filed her benefits applications in July 2011, alleging she has been unable to work since September 1, 2009. *AR 11,*

-1-

*173, 179.* She alleges that she suffers from depression, in addition to "severe impairments of morbid obesity, degenerative disc disease of the lumbar spine, status-post right hemilaminectomy at L4-S1, right hip trochanteric bursitis, and history of bronchitis." *ECF 1 at 2.*

The Social Security Administration ("SSA") denied Yanchar's applications initially and upon reconsideration. *AR 67–87; 92–110.* An Administrative Law Judge ("ALJ"), after conducting a hearing (*AR 32–65),* denied her claims (*AR 11–20*). Yanchar sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied Yanchar's request for review, making the ALJ's decision final for purposes of judicial review. *AR 2–4.*

## II. STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Garcia v. Commr. of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (citation omitted); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities in the record. *Treichler v. Commr. of Soc. Security*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

### III. <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant

has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)–(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)–(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id*.

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id*. If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

IV. **THE ALJ'S OPINION**

The ALJ followed the five-step sequential evaluation process in considering Yanchar's claim. First, the ALJ found that Yanchar had

not engaged in substantial gainful activity since her alleged onset date. *AR 13*.

At step two, the ALJ found that Yanchar has the following severe impairments: "morbid obesity, degenerative disc disease of the lumbar spine, status-post right hemilaminectomy at L4-S1, right hip trochanteric bursitis, and history of bronchitis." *AR 13*. The ALJ also noted that Yanchar has alleged mental impairments of depressive disorder, pain disorder, and personality disorder, but determined that these impairments are "nonsevere." *AR 14–15*. In making this determination, the ALJ considered the four broad functional areas used to evaluate mental disorders in the Listing of Impairments. The ALJ found only mild limitation in the categories of activities of daily living, social functioning, and concentration, persistence or pace and found no evidence of any episodes of decompensation. *AR 14*.

At step three, the ALJ found that Yanchar does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments. *AR 15*.

The ALJ found that Yanchar has the residual functional capacity

("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally stoop, crouch, kneel, balance, crawl, and climb. She has no visual, manipulative, or communicative limitations. She must avoid concentrated exposures to extreme cold and vibrations. She must also avoid concentrated exposure to pulmonary irritants such as dusts, fumes, gases, pollens, and odors.

*AR 16*.

Next, the ALJ found that Yanchar is capable of performing past relevant work as a receptionist/secretary. *AR 19*. In so finding, the ALJ relied upon the testimony of a vocational expert ("VE") who stated that Yanchar's past work as a secretary and receptionist could generally be performed within the confines of Yanchar's RFC. *AR 19*. The ALJ also found that as a secretary and receptionist, Yanchar worked full time, her wages were gainful, and she worked long enough to learn the specific skills required for the job. *AR 19*.

## V. **SUMMARY OF PARTIES' ARGUMENTS**

Yanchar argues that the ALJ erred by: (1) failing to include all impairments; (2) requiring medical determined impairments as opposed to medically determinable impairments at the date of disability; (3) finding Yanchar not credible by misrepresenting the testimony at the

hearing; (4) failing to consider the medical evidence and ignoring the treating physician's findings, including MRI findings; (5) denying Yanchar's claim for disability benefits without supporting the decision with substantial evidence; (6) failing to incorporate all of Yanchar's impairments into the VE's hypothetical question; (7) failing to find Yanchar met the a listing in the Listing of Impairments; and (8) failing to consider depression as a severe impairment. *ECF 10* at 6, 16–32. Yanchar also argues that the ALJ's decision should be reversed or remanded. *Id.* at 32–33.

In response, the Commissioner argues that the ALJ: (1) properly evaluated Yanchar's credibility concerning her statements of intensity, persistence, and limiting effects of her symptoms; (2) properly resolved the medical evidence; (3) reasonably determined Yanchar did not meet a listing; (4) properly resolved the medical evidence; and (5) reasonably determined Yanchar's RCF. *ECF 11* at 4–23. The Commissioner also argues that Yanchar failed to meet her burden to show and inability to return to past relevant work and failed to identify a harmful error that would warrant remand or reversal. *Id.* at 23.

In reply, Yanchar argues that: (1) activities she engaged in prior to her disability onset date cannot be used in considering her credibility, *ECF 12* at 1–2, 9; (2) Yanchar's inability to afford treatment should not be used to find a negative credibility finding, *id.* at 3–4, 6; (3) no treating physician found evidence of self-limitation, *id.* at 5; and (4) the ALJ erred in finding Yanchar's depression only caused mild impairment. *Id.* at 8–9.

## VI. <u>DISCUSSION</u>

The primary issues before the court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. The Court is not permitted to re-weigh the evidence. For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the Commissioner's decision is supported by substantial evidence in the record, and is free of harmful legal error. Thus, the Court will affirm the ALJ's decision.

### A. <u>ALJ's Consideration of the Evidence</u>

In evaluating Yanchar's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review th[at] decision[ ] intelligently." *Vincent v. Heckler*, 739 F.2d

1393, 1394 (9th Cir. 1984) (citation omitted). In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *AR 11–20*. He clearly stated his rationale for rejecting some evidence in his assessment of Yanchar's medical records, credibility, and RFC. *Id.* The ALJ also set forth the evidence—which the Court concludes is substantial—that informed and supported his conclusion with respect to Yanchar's disability claim. *Id.* For these reasons, and after the Court's own review of the record, the Court finds that the ALJ properly considered all evidence. In short, the ALJ did not err.

### B. ALJ's Assessment of Yanchar's Credibility

In *Molina v. Astrue*, the Ninth Circuit restated the long-standing standard for assessing a claimant's credibility as follows:

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence,

and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d 1104, 1112–13 (9th Cir. 2012) (citations and internal quotations omitted).

Here, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged. *AR 17*. The ALJ did not find that Yanchar was malingering. Thus, to find that Yanchar was not entirely credible, the ALJ had to give specific, clear, and convincing reasons. The Court concludes that he did so.

The ALJ observed that objective medical evidence did not support Yanchar's allegations respecting her inability to perform all work activity. *AR 17*. The ALJ found there was very little medical evidence between her alleged onset date in 2009, and when she filed for disability in 2011. *AR 17*. The medical evidence closest to her onset date indicated that she had experienced a 75% decrease in pain and, on February 16, 2009, she was instructed to gradually return to normal activities. *AR 17, 396–397*. The ALJ indicates there was only rare treatment from that date until July 2011. *AR 17*.

In November 2011, two physicians employed by the Disability Determinations Services found Yanchar was capable of sedentary work, based on an examination conducted by Dr. Anderson, a non-treating source. *AR 18*. Additionally, the ALJ cites an examination by Dr. Peterson, a Licensed Clinical Psychologist, who found that Yanchar had adequate intellect and psychological authority to engage in work-related activity. *AR 18*. The ALJ found these medical conclusions to be inconsistent with Yanchar's allegations respecting her functional limitations.

The ALJ found further contradictions between Yanchar's testimony and her medical records. *AR 18–19*. During Yanchar's exam with Dr. Peterson, she reported that she continued to lose weight, at the rate of 5 pounds per month. During her physical therapy evaluation in July 2012, she reported that she walked daily and was performing household chores for exercise. *AR 18, 454*. The ALJ found this to be inconsistent with her earlier indications that she could not perform household chores and rarely left home. *AR 18, 54–55*.

The ALJ also found that Yanchar's medical records did not support her complaints of disabling pain. *AR 18–19*. In an exam on November 26, 2011, Dr. Peterson noted that he thought Yanchar's compromised gait, posturing, and musculoskeletal discomfort were at times "voluntarily initiated." *AR 18, 438*. In January 2012, Yanchar reported her pain was a 9 out of 10, but she appeared to be in no distress, her affect was appropriate, and her mood was normal and pleasant. *AR 19, 465–466*. In a follow-up exam in July 2012, Yanchar reported that her pain had subsided and the records show her lower back was non-tender to palpitation. *AR 19, 451*. Based on these

records, the ALJ found Yanchar's testimony regarding the severity and persistence of pain was not credible. *AR 18–19.*

For these reasons, the Court finds that the ALJ's provided clear and convincing reasons for finding Yanchar to be not entirely credible in her statements concerning the intensity, persistence, and limiting effects of her symptoms.

C. **ALJ's Assessment of Yanchar's Medical Evidence**

Yanchar argues that, based on the treating physical and mental physicians' findings and diagnoses, the ALJ improperly ignored the medical evidence. *ECF 10* at 24–25. Specifically, Yanchar argues that: (1) the ALJ erred by failing to include the findings of depression in the RFC and erroneously discounted the severity of her mental limitations; (2) the medical evidence did not suggest she was overstating her limitations; and (3) the ALJ erred in finding that Yanchar did not meet the requirements for a Listing in the Listing of Impairments. *Id.* at *24–27.* Yanchar is essentially urging the Court to re-weigh the evidence, and to arrive at a conclusion different from that of the ALJ. The Court is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997).

The ALJ found that Yanchar's medically determinable mental impairments were non-severe. *AR 14*. Though Dr. Littlefield indicated that Yanchar had moderately severe depression, the ALJ found it caused only a mild limitation. *AR 14*. In determining the severity of Yanchar's mental impairments, the ALJ considered the four broad functional areas used to evaluate mental disorders in the Listing of Impairments. *AR 14*. In the areas of daily living, social functioning, and concentration, persistence, or pace, the ALJ found only mild limitation, and found no episodes of decompensation. *AR 14*. He noted that Yanchar did not take the Prozac prescription Dr. Littlefield gave to her for her depression. *AR 14, 474*.

In evaluating the medical evidence from Dr. Peterson, the ALJ noted that Dr. Peterson did assign a global assessment of functioning ("GAF") score of 53 to Yanchar, which normally indicates moderate impairment in social functioning and work-related activity. *AR 18, 439*. But even with this GAF score, Dr. Peterson specified that Yanchar had adequate intellect and psychological authority to perform work activity, supporting the ALJ's finding that her mental impairments are non-severe. *AR 18, 439*. Based on these findings, the

Court determines that the ALJ did not err in finding Yanchar's mental impairments were non-severe and that she did not meet or medically equal the listing, in the Listing of Impairments for her depression, but instead considered it in combination with her other impairments as discussed below.

Next, the ALJ relied on a physical consultative exam administered by Dr. Anderson as well the medical evidence from Yanchar's treating physicians. *AR 18–19.* Dr. Anderson did not provide specific work-related limitations, nor did Yanchar's treating physicians at Riverstone health. *AR 18–19, 440–443, 465–469.* As noted, based on Dr. Anderson's examination, two physicians employed by the Disability Determinations Services found Yanchar capable of sedentary work. *AR 18.* The ALJ indicates that the RFC incorporates Dr. Anderson's assessment that Yanchar had difficulty standing for long periods of time. *AR 18.*

Finally, after assessing the combined impact of Yanchar's impairments, the ALJ found that Yanchar did not meet Listing section 1.04, the listing for a spine disorder. *AR 15.* Yanchar argues that she meets or medically equals this Listing because she suffers from

weakness, falling and numbness, and impaired gait. *ECF 10* at 27–28. But a "generalized assertion of functional problems is not enough to establish disability at step three. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The ALJ found that she did not meet the listing because the "record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." *AR 15*. This finding is not directly disputed, nor is there medical evidence to the contrary. Yanchar relies on her testimony regarding her symptoms in arguing she meets the listing—testimony the ALJ found was not entirely credible. Substantial evidence supports the ALJ's finding that Yanchar's medical records establish effective ambulation. *AR 447, 466, 469*. As such, the ALJ did not err in finding Yanchar does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

### D. ALJ's Consideration of Vocational Expert's Opinion

Yanchar argues that the ALJ erred in posing a hypothetical question to the vocational expert that did not set forth all of her impairments. *ECF 10* at 31–32. But where, as here, a claimant fails to

show that she is unable to return to her previous work, the burden of proof remains with the claimant. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Vocational expert testimony at this step in the sequential evaluation is therefore "useful, but not required" to support the ALJ's decision. *Id.*

The Court has already determined that the ALJ based his decision on substantial evidence in the record and has concluded that the ALJ did not err in his assessment of the medical evidence, or in his assessment of Yanchar's credibility regarding her symptoms and limitations. The ALJ was not required to include in his hypothetical question to the vocational expert Yanchar's symptoms and limitations not supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."). Rather, the ALJ was free to consider the evidence as a whole in making his determination as to Yanchar's limitations. The Court concludes he did so, and thus he did not err.

## VII. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision denying DIB and SSI is AFFIRMED.

The Clerk of Court shall enter Judgment accordingly and close this case.

DATED this 18th day of March, 2015.

>  ***/s/ Carolyn S. Ostby***
> United States Magistrate Judge